Filed 7/19/16  P. v. Razo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>VICKY RAZO,<br><br>        Defendant and Appellant. | C079557<br><br>(Super. Ct. No. CRF14631) |

As part of a plea agreement, defendant Vicky Razo was given one attempt at completing a six-month residential treatment program.  We are called to determine if she failed in that attempt by testing positive for drugs, while on the wait list for a rehabilitation program.  We conclude she has and affirm the judgment.

FACTS AND PROCEEDINGS

Defendant pleaded no contest to unlawfully possessing marijuana for sale (Health & Saf. Code, § 11359) and admitted a prior strike.  In exchange, she was allowed one

1

attempt at completing a six-month or longer residential treatment program. The agreement was that, if successful, her strike would be stricken for purposes of this offense and she would be granted probation. If she was not successful in completing a program, she could be sentenced to up to six years in state prison. The agreement provided in pertinent part: "I understand and agree to the terms listed below as part of this plea bargain agreement: [¶] . . . [¶]

"3. Judgement [*sic*] and sentencing will be continued to a date in the future so that I may participate in a residential rehabilitation treatment program of at least six (6) months in duration.

"4. I will only be allowed one (1) attempt at completing the residential rehabilitation program of at least six (6) months in duration.

"5. If I am removed from the program for any reason prior to its completion or if I leave the program for any reason prior to completion then my case will be scheduled for judgement [*sic*] and sentencing and I could receive up to 6 years in state prison.

"6. If I successfully complete a residential treatment program of at least six (6) months in duration, my strike will be stricken and my plea will be conditioned on 'no immediate state prison.' "

The agreement did not address missed court appearance nor did it include a requirement to obey all laws. And neither the plea agreement nor the trial court admonished defendant, under Penal Code section 1192.5, that the court's approval is not binding, and if the court withdraws its approval, defendant may withdraw her plea.

A month after her plea, defendant was on the wait list for a rehabilitation program. The court granted her another 30 days to enter the program and ordered her to appear after the 30 days, unless she was in a program. A month later, defendant was still on the wait list. The court ordered a drug test and ordered defendant to appear for a review hearing in three weeks.

Three weeks later, defendant failed to appear. A probation officer reported defendant had tested positive for amphetamine and THC. Two weeks later, defendant appeared; the court referred her to probation and set a sentencing hearing.

At sentencing, the trial court explained: "There was an opportunity in this matter to complete a residential treatment program. . . . But that did not get done. She tested positive at the review hearing and failed to appear."

Defense counsel conceded defendant had failed to appear at the review hearing because of the drug test. Counsel added: "I had a chance to explain to her that failing to appear, at the very least not coming back, making a warrant to go out, is what caused the plea deal to be set aside." He continued: "As the Court knows, Chico [(the rehabilitation program)] would have tested her anyway. She would have tested dirty. She would have been right back in the same position." Counsel then asked for another opportunity for defendant to complete rehabilitation. Alternatively, he argued for imposition of the middle term; probation and the prosecution had recommended the upper term. The court imposed the middle term.

Defense counsel did not object to the imposition of sentence. And defendant did not obtain a certificate of probable cause before filing this appeal.

## DISCUSSION

On appeal, defendant contends the trial court violated her right to due process by failing to sentence her in accordance with the plea agreement. She avers neither her failure to appear nor her positive drug test breached the agreement.

The People counter that (1) defendant cannot attack her plea because she did not obtain a certificate of probable cause; (2) her failure to object at sentencing forfeits the right to challenge the imposed sentence; and (3) defendant's claim fails on its merits.

3

I

*Defendant's Contention Is Not Forfeited*

Defendant's failure to obtain a certificate of probable cause does not effect a forfeiture. A certificate of probable cause is not required when an "appeal is based on '[g]rounds that arose after entry of the plea and do not affect the plea's validity.' " (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 500.) Defendant does not challenge her plea's validity; she challenges the manner of its enforcement. Thus, her challenge does not require a certificate of probable cause.

Similarly, defense counsel's failure to object at sentencing does not bar defendant's claim. Failure to object at sentencing does not forfeit a defendant's right to the benefit of her bargain, if a complete Penal Code section 1192.5 admonishment was not given. (*People v. Victorian* (1992) 2 Cal.App.4th 954, 958 fn. 5.) To the extent defendant challenges her sentence as unauthorized under the agreement, her claim is not forfeited because she was never advised pursuant to Penal Code section 1192.5.

II

*Defendant's Sentence Did Not Violate the Plea Agreement*

When a defendant pleads guilty in exchange for specified benefits, the parties and the state must abide by the agreement's terms. (*People v. Walker* (1991) 54 Cal.3d 1013, 1024, overruled on other grounds by *People v. Villalobos* (2012) 54 Cal.4th 177, 183; see *Santobello v. New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433] [once the court accepts the plea agreement, the defendant has a due process right to be sentenced in accordance with the agreement].) Punishment may not "significantly exceed" what the parties agreed on. (*Walker,* at p. 1024.) But not every deviation from an agreement is constitutionally impermissible. (*Ibid*.) "[T]he variance must be 'significant' in the context of the plea bargain as a whole to violate the defendant's rights." (*Ibid*.)

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

Here, sentencing defendant following her failed drug test was not at significant variance with the negotiated plea agreement and the parties' intentions. Defendant pleaded no contest in exchange for an opportunity to complete a six-month residential treatment program. At sentencing, defense counsel said: "As the Court knows, Chico would have tested her anyway. She would have tested dirty. She would have been right back in the same position." The prosecutor and the court appeared to agree with the concession that her use of drugs while waiting to enter a program disqualified her from the rehabilitation program she had applied to.

Defendant responds that her counsel's concession constituted ineffective assistance. She argues a lawyer may not eliminate a client's essential defense.

But the record does not show counsel's statement was erroneous. Indeed, counsel may have concluded candor was defendant's best chance at receiving another treatment attempt — or at least avoiding an upper term (the court imposed the middle term over the recommendations of probation and the prosecution.) Moreover, counsel may have seen no disadvantage to such candor, concluding the court had reached the same conclusion: "As the Court knows, Chico would have tested her anyway." To the extent defendant contends otherwise, a claim of ineffective assistance is more appropriately brought in a habeas corpus proceeding, where the record can shed light on counsel's actions. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

DISPOSITION

The judgment is affirmed.

5

                                    \_\_\_\_\_HULL_____, Acting P. J.


We concur:



_____ROBIE_____, J.



_____BUTZ_____, J.


6